In the Matter of the Estate of JOHN SCRANTON SHAW, Deceased.*

Surrogate's Court, New York County, June 14, 1927.

**Taxation — transfer tax — beneficiary under war risk insurance died — commuted value of decedent's war risk insurance is exempt from transfer tax under United States Code, tit. 38, § 454.**

The commuted value of the decedent's war risk insurance policy upon the death of the beneficiary is exempt from transfer taxes under section 454, title 38, of the United States Code.

APPLICATION to declare the estate exempt from transfer tax.

*Stafford Smith,* for the petitioner.

*Charles A. Curtin* [*A. Welles Stump* of counsel], for the State Tax Commission.

O'BRIEN, S. The only substantial asset of the estate is the sum of $7,428.58, the commuted value of the decedent's war risk insurance. The decedent died November 7, 1918, leaving him

* Reversed by decision of Surrogate O'BRIEN, not reported, rendered December 23, 1927, citing *Matter of Dean* (131 Misc. 125) and *Matter of Schaeffer* (130 id. 436).

surviving his mother and a brother. Under the terms of the war risk insurance the sum of $57.50 per month was payable to his mother and she received such payments until March 5, 1925, the date of her death. After her death the government paid over the commuted value of the remaining installments, amounting to the sum above set forth, to the administrator of the decedent's estate.

Section 454 of title 38 of the United States Code of Laws in so far as is material is as follows: " Assignability and exempt status of compensation, insurance, and maintenance and support allowances.— The compensation, insurance, and maintenance and support allowance payable under Parts II, III, IV, respectively, * * *, shall be exempt from all taxation."

The application is granted. *Matter of Knoedler* (140 N. Y. 377), cited by the State Tax Commission, does not apply, as no question is presented in that case involving a statutory exemption of the proceeds of life insurance. Obviously the intention of Congress was to exempt the proceeds of war risk insurance from any taxation whatever. This is evident by a comparison of section 454 of title 38 of the United States Code of Laws, above quoted, with section 746 and section 747 of title 31 of the same code. Section 746, which exempts from taxation first Liberty bonds, reads (in part) as follows: " The principal and interest thereof * * * shall be exempt, * * * from all taxation, *except the estate or inheritance taxes,* imposed by authority of the United States, or its possessions, or by any State or local taxing authority." Section 747 of the same title, which exempts from taxation the second and subsequent Liberty loans, contains substantially the same provision. If the intention of Congress had been that the proceeds of war risk insurance should be exempt from all taxation, *except estate or inheritance taxes,* it would have been a simple matter for it to have so provided by the use of appropriate language as it has done in the case of Liberty Loan bonds. The Federal government endeavored to place the strongest possible protection about those who joined the military and naval service and their dependents. The statute in question and the amendments thereto, although passed at later dates, were made effective as of October 6, 1917, presumably in order that the service men might feel that the members of their family were to receive every possible protection within the powers of the Federal government if they made the supreme sacrifice in the World War. The dependents of these heroes should not be deprived of any part of the proceeds of the United States war risk insurance and the very purpose of the statute thereby frustrated.