In the Matter of the Transfer Tax upon the Estate of GERALD H. SABIN, Deceased.

Surrogate's Court, Lewis County, February 3, 1928.

**Taxation — transfer tax — war risk insurance — policy provided for payments to beneficiary and on his death to persons designated by will or in absence of will by intestate laws of State — insured died in 1918 and payments were made to father, beneficiary, until his death and then to grandfather until his death in 1925 — balance then due was paid to estate of insured under World War Veterans' Act, § 303, as amended, after death of insured — money thus paid estate was not part of estate and not taxable under Tax Law, § 220.**

The intestate at the time of his death in 1918 was covered by a war risk insurance policy for $10,000 in which his father was named as beneficiary. The policy also contained a provision that in case of death of the beneficiary before all payments were made the remaining payments should be made to a beneficiary named in the will of the insured or in case he should die intestate then to the person who under the laws of the State of his residence would be entitled to take his personal property. And section 28 of the War Risk Insurance Act then provided that the insurance should be exempt from all taxation. Pay-

ments were made to the decedent's father, the beneficiary named in the policy, and after the father's death payments were made to the grandfather of the insured until his death in 1925. At that time the balance remaining unpaid was paid to the estate of the insured under a provision of section 303 of the World War Veterans' Act, as amended in 1925, which provided that upon the death of the designated beneficiary the present value of the unpaid payments should be paid to the estate of the insured.

The amendment of section 303 of the World War Veterans' Act did not change the policy in substance nor did it operate to give the estate title to the money so transferred but the proper construction of the amendment is that the statute merely made the estate the medium through which the money due on the policy would reach those entitled to it under the terms of the policy. Therefore, the money so paid is not subject to the transfer tax imposed by section 220 of the Tax Law.

Furthermore, if it be conceded that the money became the property of the estate it was not subject to the transfer tax for the money never belonged to the insured and, therefore, was never transferred by him by intestate succession.

APPEAL by the State Tax Commission, pursuant to section 232 of the Tax Law, from a *pro forma* order entered herein June 22, 1927, which determined that this estate was not subject to a transfer tax.

*Charles S. Mereness* [*Seth T. Cole* of counsel], for the appellants.

*Edward J. Boshart*, for the respondents.

CARTER, S. Gerald H. Sabin was a soldier in the United States army in the World War, died intestate, unmarried, in France, on the 13th day of October, 1918, a resident of the town of Turin, in the county of Lewis, N. Y., and survived by his father, Gerald N. Sabin, his only heir and next of kin. The soldier was also survived by a grandfather, two aunts and one uncle, and said two aunts are now living.

The said Gerald N. Sabin was, by this court, appointed administrator of the estate of said soldier and acted as such until his death, intestate and unmarried, on the 3d day of April, 1923, and on the 29th day of July, 1926, Edith J. Sage and Fred C. Sabin were, by this court, appointed administrators *de bonis non* of the estate of said soldier, and are still acting as such, and are the respondents herein.

At the time of the death of the said soldier he held a war risk insurance certificate, dated March 12, 1918, for $10,000, issued by the United States government pursuant to the War Risk Insurance Act.

So far as important to the question before us, the application of the soldier for said war risk insurance is as follows:

" I hereby apply for insurance in the sum of $10,000.00 payable as provided in the Act of Congress approved October 6, 1917, to

myself during permanent total disability and from and after my death to the following persons in the following amounts:

| RELATIONSHIP TO ME | NAME OF BENEFICIARY | P. O. ADDRESS | AMOUNT OF INSURANCE |
|---|---|---|---|
| Father | Gerald Norton Sabin | Allentown, N. Y. | $10,000.00 |

" In case any beneficiary die or become disqualified after becoming entitled to an installment but before receiving all installments, the remaining installments are to be paid to such person or persons within the permitted class of beneficiaries as may be designated in my last will and testament, or in the absence of such will, *as would under the laws of my place of residence be entitled to my personal property in case of intestacy.*

" I authorize the necessary monthly deduction from my pay, or if insufficient, from any deposit with the United States, in payment of the premiums as they become due, unless they be otherwise paid."

The war risk insurance certificate states: " Subject to the payment of the premiums required, this insurance is granted under the authority of an act amending ' An Act entitled "An Act to authorize the establishment of a bureau of War Risk Insurance in the Treasury Department," approved September 2, 1914, and for other purposes,' approved October 6, 1917, and subject in all respects to the provisions of such Act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, *together with the application for this insurance,* and the terms and conditions published under authority of the Act, *shall constitute the contract.*"

Section 28 of the War Risk Insurance Act, in effect June 25, 1918 (40 U. S. Stat. at Large, 609), provides, in substance, that insurance payable under this certificate of insurance *shall not be assignable; shall not be subject to the claims of creditors; and shall be exempt from all taxation.*

Section 402 of said act, in effect June 25, 1918 (40 U. S. Stat. at Large, 409), provides, in substance, that the insurance shall be paid in 240 equal monthly installments, and that " subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided;'" and also that the insurance should be payable only to a spouse, child, grandchild, parent, brother or sister, who were designated as the permitted class. After the death of the soldier and on December 24, 1919 (41 U. S. Stat. at Large, 375), the permitted class of

beneficiaries was increased to include, in addition to the persons above mentioned, uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured, and this increase was to be deemed to be in effect as of October 6, 1917.

All of the statutes above referred to were repealed by section 600 of the World War Veterans' Act (43 U. S. Stat. at Large, 629, passed June 7, 1924), except that said repeal " shall not affect any act done or any right or liability accrued; " and section 601 of said act provided, in substance, that the World War Veterans' Act (1924) " shall be in force in lieu " of said repealed acts.

From the language contained in said application for insurance, the surrounding circumstances and the entire contract, it is evident that the parties to the contract intended that if the designated beneficiary (father) did not live to receive all the 240 equal monthly installments of insurance, the remaining installments were to be paid to the living next of kin of the soldier, in succession, until the whole 240 installments had been paid to living next of kin, who could receipt for and benefit by the payments; that no payments were to be made to estates of deceased next of kin, and no lump sum payment covering all unpaid installments was contemplated. It is true, all of the beneficiaries were not mentioned by name in the contract of insurance and it is evident, in the nature of things, that they could not have been so designated at the time the contract was made, but the contract provided that the beneficiaries were to be ascertained and pointed out by the intestate laws of this State — not that they were to take under the laws of this State but as beneficiaries under the contract, and they were thus designated as beneficiaries as surely as if they had been mentioned by name.  This seems to be the construction given by the government to the contract, for after the death of the soldier monthly payments were made to the father of the soldier until his death and then to the grandfather of the soldier (the then next of kin) until his death, which occurred on the 25th day of July, 1925.

The United States government determined the amount still owing on said certificate of insurance at the death of said grandfather was $7,316 and paid said sum on or about the 20th day of March, 1927, to the said administrators *de bonis non* of the estate of said soldier.

The only question before this court is whether said $7,316, or rather its transfer, is subject to the transfer tax laws of the State of New York.

Up to the time of the death of the soldier he had a right to designate and change the beneficiaries, but neither he nor his estate had any interest or title to the moneys to be paid under the certificate

of insurance. From and after the death of the soldier the beneficiaries were the owners of all moneys to be paid under said certificate (*Schoenholz* v. *New York Life Insurance Co.*, 234 N. Y. 24, 29; *McNamara* v. *Knights of Columbus*, 206 App. Div. 364) and had a vested interest therein. (*White* v. *United States*, 270 U. S. 175.)

The government did not own the money owing on the contract of insurance; it owed it. It was a liability and not an asset. The government was not authorized by the contract to designate or change the beneficiaries. That right belonged to the soldier only.

It is the settled law of this State that a beneficiary under an ordinary life insurance policy, upon the death of the assured, has a vested interest therein, and payment of the proceeds of such policy to such beneficiary is not subject to a transfer tax, and this rule appears to be the same as to war risk insurance.

In *Matter of Geier*, decided January 7, 1924, in the Supreme Court of the State of Louisiana (155 La. 167; 99 So. 26; 32 A. L. R. 353), the soldier died leaving war risk insurance, in which his mother was named as sole beneficiary. The mother died before the soldier and no other beneficiary was substituted in her place. Held, the insurance at the death of the soldier became payable to his surviving father and brothers and sisters and that they took as beneficiaries under the War Risk Insurance Act and not as next of kin. The court said: " For these reasons we are of the opinion that the beneficiaries of deceased service men, who receive insurance money under the provisions of the War Risk Insurance Act, do not take as heirs. They come within the permitted class of beneficiaries, because they are the heirs at law or next of kin of the deceased service man, but they are designated in the act as beneficiaries, and they take as such under the contract of insurance to the same extent and in the same manner as the beneficiary named in the policy of insurance would take in the event such beneficiary survived the insured."

It is evident the government when it attempted to make payments to beneficiaries named in this and other similar contracts of insurance, and which beneficiaries were to be ascertained and determined, from time to time, according to the laws of forty-eight States, found great difficulty in ascertaining the beneficiaries, making such payments and carrying out the contract in this respect, and it is but a reasonable conclusion that the government, to obviate this difficulty, enacted the statute hereinafter mentioned on March 4, 1925.

After the death of the soldier and on March 4, 1925, section 303 of the World War Veterans' Act (43 U. S. Stat. at Large, 1310)

was amended by eliminating all reference to surviving persons of the permitted class and so as to read in part as follows: " If the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, *there shall be paid io the estate of the insured the present value of the monthly installments thereafter payable;* " and provides " that this section shall be deemed to be in effect as of October 6, 1917."

The act of March 4, 1925, quoted in part above, caused a conflict in the terms of the contract of insurance. The contract provided for payment of the installments owing on the contract of insurance to beneficiaries named therein, while the amendment provided for the payment of the balance owing on the contract, $7,316, " to the estate of the insured." Which provision of the contract of insurance shall prevail? The provision that directs the $7,316 to be paid as provided in the contract, or the provision that directs said sum to be paid to the estate of the soldier, or can the two provisions be reconciled?

In construing this contract — and it is a contract, not a statute — we must give full force and effect to each part, including the application for insurance and the amendment, and from the whole contract determine what was the intention of the parties. The purpose of this contract is to protect the soldier and his dependents, and it was so stated in the act.

Congress is not forbidden to enact statutes which impair the obligations of a contract, as are the States; still a retrospective statute of Congress which operates so as to take away a right of property may be unconstitutional as taking property without " due process of law," and such statutes are not favored and should eceive a strict construction.

While the contract of insurance was made subject to subsequent amendments, such amendments were not to supersede the other terms of the contract, but were to become a part of the contract, and it does not follow from the right to amend that amendments could be made which would utterly destroy the contract or be retroactive so as to be in force at a time before the contract was made.

There must be some limit to the right of the government to change this contract by amendment. It cannot be that it was within the contemplation of the parties that the government could change substantially the terms of the contract; certainly not after the death of the soldier. This insurance was largely an experiment and it would be expected that difficulties in carrying it out would be encountered and that the government might need to make minor changes in the law as to the carrying out of the contract, such as

enlarging the number of persons in the permitted class, or removing all limitations to such permitted class, or providing for the manner of payment to beneficiaries, or designate in whose hands the money should be placed for such payment, and so as to carry out as near as possible the terms and purposes of the contract as it existed when made.

Section 1 of article 8 of the Constitution of the State of New York reserves the right to alter, from time to time, or repeal all laws authorizing formation of corporations, but the Legislature cannot under the authority of this section confiscate the property of a corporation or deprive it of its vested property rights. (*New York Central & Hudson River Railroad Co.* v. *Williams*, 199 N. Y. 108, 117.)

The case of *White* v. *United States* (270 U. S. 175) is cited as authority that legislation as to war risk insurance was valid even to the extent of taking away rights that were previously vested, but I do not understand that case to so hold. In that case the soldier at the time of his death, October 4, 1918, held war risk insurance upon his life for $10,000, in which his mother was designated as beneficiary. The mother drew the installments on the insurance through January, 1921. The soldier left a will in which he provided that one-half of the sums to be paid on the insurance should go to his aunt. After the death of the soldier and on December 24, 1919, a statute was passed which enlarged the permitted class of beneficiaries to include, for the first time, aunts, and to be in effect as of October 6, 1917. The question was whether the aunt, under these circumstances, was entitled to one-half of the payments of insurance. It was argued by the mother that " although the statute allowed a beneficiary to be named by will, it did not extend the benefit to aunts, so that her son's will was ineffective at the time when it was established; that therefore the mother's interest vested as absolute at the son's death, and could not be defeated by later legislation." It was held that the aunt was entitled to one-half of the payments on the insurance. The court said: " The only relations of contract were between the Government and him [the soldier]. White's mother's interest at his death was vested only so far as he and the Government had made it so, and was subject to any conditions upon which they might agree. They did agree to terms that cut her rights down to one-half. She is a volunteer and she cannot claim more." That decision does not hold that the government could pass a law valid to the extent of taking away rights previously vested without the consent of the insured; and in this connection it must be remembered that section 402 of the act provides that " the insured

shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided."

It is but reasonable to assume that the government, by the amendment of March 4, 1925, did not intend to do violence to the substantial terms of the contract, but did intend to obviate the difficulty of ascertaining and making payments to beneficiaries, and for this purpose directed that the money still owing on the contract of insurance should be paid to the estate of the soldier — that is, to the legal representative thereof, and that said representative should pay and distribute said money among the beneficiaries, who are entitled thereto under the terms of the contract. The amendment directs payment of the balance owing on the certificate of insurance to the estate of the soldier, but does not refer to the contract of insurance, and the only reasonable construction is that the contract remains in force in every respect, except that the government has directed the payment to be made to the estate of the soldier. The amendment does not say that this money shall become a part of the soldier's estate at his death or at any other time. It should not be assumed, even if the government had the power so to do, that it changed or intended to change the contract in any material part, except as is expressly stated in the amendment.

As I understand it, the contention of the State Tax Commission is that by the amendment of March 4, 1925, the money in question became in fact a part of the estate of the soldier, the same as though he had been the absolute owner thereof at the time of his death, and that when it passes from the estate of the soldier to his next of kin it becomes subject to a transfer tax. If this contention is correct, the effect of the amendment is that the government takes the money, which it does not own, but owes, from the beneficiaries designated by the soldier, who do own it, and gives it to the estate of the soldier, who has been dead for years and who had no interest in it at his death, and thereby subjects it to a transfer tax and to debts, in direct violation of the contract of insurance.

Such construction should be given this contract and said amendment, if reasonably possible, as to pass the money in question into the hands of blood relatives and not into the hands of strangers, who might take by inheritance or representation from a deceased wife or from next of kin of the soldier, as must often happen if the insurance money becomes in fact a part of the soldier's estate, and especially as in many cases the soldier may have been dead twenty years before the payment is made; and said contract should be so construed as to exempt all payments of insurance from transfer

tax, and thus not violate the terms of the contract, if such construction can be reasonably given.

In *Matter of Elting* (78 Misc. 692) the testator held a policy of insurance upon his life payable to his executors, administrators or assigns, " for the express benefit of his wife, Carrie D. Elting, and surviving children." Held, that the money payable on said policy was not subject to a transfer tax. The court said: " It seems to me that the language of the policy simply designates the executors, administrators or assigns as some one to whom the payment can be made but it is clearly not for them to say what shall be done with it but they are the medium only to pass the money to the widow and children, who are alone entitled to its proceeds.   *   *   * This policy, to my mind, is merely a contract between the decedent and the company for the benefit of his wife and children and no one else is or can be interested therein and the same does not pass by reason of the provisions of this will but by reason of the clause in the policy itself."

In *Matter of Morrison* (130 Misc. 438) the decedent was a retired teacher in the public schools of the city of New York and as such teacher was entitled to have certain payments from the teachers' retirement fund made to her for life, and at her death her legal representative was to be paid $16,338.60, less payments made to her prior to her death, unless she should designate some person to receive said sum. The decedent did not designate any one and said sum was paid to the executrix of her estate. Subdivision W of section 1092 of the Greater New York charter provides as follows:

" W. The right of a person to a pension, an annuity, or a retirement allowance, to the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this act, and the moneys in the various funds created under this act, are hereby exempt from any state or municipal tax, and exempt from levy and sale, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this act specifically otherwise provided." Held, that said sum was not subject to a transfer tax. The above-quoted exemption is not broader than the exemption contained in section 28 of the War Risk Insurance Act above referred to, viz., that the insurance payable under the certificate of insurance " shall be exempt from all taxation."

As tending to show the liberal construction placed on the War Risk Insurance Act, attention is called to *Payne* v. *Jordan* ([1921], 152 Ga. 367) in which the court held that money paid over to a

beneficiary under the War Risk Insurance Act, although deposited by the beneficiary in a bank, was not subject to garnishment.

The transfer tax is not a tax upon property but the right of succession to property. It is upon the right to receive an estate or portion thereof. (*Matter of Penfold*, 216 N. Y. 163, 167.) The property is transferred and the transfer tax accrues at the date of the death of the owner of the property, and the tax is computed on the value of the property as of the date of death. (*Matter of White*, 208 N. Y. 64, 67.)

Section 220 of the Tax Law provides, so far as applicable to this case, that a tax is imposed upon the transfer of property by the intestate laws of this State from any person dying seized or possessed thereof.

In order that the money in question be subjected to a transfer tax, it must have been owned by the soldier at his death and transferred from him to his next of kin under and by virtue of the intestate laws of this State (Tax Law, § 220), but the soldier at his death had no title or interest in the certificate of insurance nor in said money. There was nothing to transfer and nothing upon which a transfer tax could have been assessed. The soldier could not have become the owner of property after his death, nor could any property be given to him after that time.

If, however, it be assumed that by the amendment of March 4, 1925, title to said money vested in the estate of the soldier, *i. e.*, his legal representatives, and that they were to dispose of it under the intestate laws of this State to the next of kin of the soldier, still the transfer to said next of kin would not be subject to a transfer tax under said section 220, for the reason that the transfer is not from the soldier to the next of kin.

The law imposing a transfer tax must be strictly construed against the State and favorably to the taxpayer. The burden is upon the State of proving the tax, and if a doubt exists whether a tax is to be levied or not, it should be resolved against the State. (*Matter of Vassar*, 127 N. Y. 1, 12; *Matter of Miller*, 77 App. Div. 473; *Matter of Wadsworth*, 198 id. 483, 486; *Matter of Dunn*, 118 Misc. 426, 428.)

My attention has been called to *Matter of Schaeffer* (130 Misc. 436), *Matter of Dean* (131 id. 125), and *Matter of Shaw* (N. Y. L. J. Dec. 24, 1927, revg. 130 Misc. 440). In each of these cases the question was presented as to whether money derived from war risk insurance was subject to a transfer tax, and such money was held subject to said tax. I am unable to agree with the conclusions reached in these cases.

My attention has also been called to *Matter of Storum* (220

App. Div. 472). In that case the soldier died October 16, 1918, holding a war risk insurance certificate for $10,000, in which his wife was named as beneficiary. The soldier was survived by his wife and by his mother and father, his only next of kin. The monthly installments of insurance were paid to the wife until her death, March 7, 1925, at which time $7,498 was still unpaid of said insurance, and this sum was paid to the administrator of the soldier. The soldier's wife was survived by her mother, Hattie R. Tillner, her only next of kin, who is administratrix of her estate. The question was, who was entitled to the $7,498. The court held that the persons who were to take said insurance money were to be determined as of the date of the death of the soldier, and that one-half of the insurance money went to the father of the soldier and the other one-half to the said Hattie R. Tillner, the mother of the soldier's widow. In that case no question of transfer tax was before the court, and it does not appear that the question as to whether the next of kin took the insurance money as beneficiaries or under the intestate laws of this State was presented to or considered by the court, nor does it appear that the attention of the court was called to the question as to what was the effect of the amendment of March 4, 1925, when considered in connection with the provisions of the application for insurance, and with the provision exempting payments of insurance from all taxation and debts and forbidding transfers of insurance.

My conclusions are:

*First.* That the government did not by the amendment of March 4, 1925, intend to change the beneficiaries under the contract of insurance, nor to make the insurance money in fact a part of the estate of the soldier, but intended only to place the insurance money in the hands of the legal representative of the soldier and that such representative should pay the same over to those who would take the same as beneficiaries under the terms of the contract of insurance and not by virtue of the intestate laws of the State.

*Second.* That whoever takes the insurance money takes it as beneficiaries under the contract of insurance and not by virtue of the laws of the State of New York.

*Third.* That the soldier at the time of his death was not the owner of said $7,316 and had no interest therein.

*Fourth.* That the insurance money in question is not, nor is any part thereof, subject to a transfer tax.

*Fifth.* That an order may be entered confirming the *pro forma* order of June 22, 1927, and adjudging and determining that said sum of $7,316 is not, nor is any part thereof, subject to a transfer tax.