In the Matter of the Estate of ALLAN L. SMITH, Deceased.

Surrogate's Court, Jefferson County, July 20, 1931.

*Arthur L. Chapman*, for the administrator c. t. a. of Allan L. Smith, deceased, and as administrator of Cora M. Smith Morris, deceased.

*Edward W. Carroll* and *Harry W. Goodwin*, for decedent's parents.

GRANT, S.   Allan L. Smith, a soldier in the military service of the United States during the World War, applied for and received a war risk insurance certificate.   His wife, Cora May Smith, was named as beneficiary.   He died December 15, 1923, leaving him surviving, besides his widow, his father and mother, William R. Smith and Agnes Smith, his only next of kin.   His last will and testament, executed September 11, 1923, was admitted to probate February 4, 1924.   In and by it he gave and bequeathed to his wife, after the payment of his debts and funeral expenses, " all of my real and personal estate of every name and nature forever." He named her executrix.   Subsequent to his death his widow married Earl A. Morris and became Cora M. Smith Morris.   She thereafter and on August 14, 1929, died intestate, leaving her surviving her second husband, Earl A. Morris, and three nephews, her only kindred.   Earl A. Morris was appointed administrator of her estate.   He was also appointed administrator c. t. a. of the Allan L. Smith estate.   During the lifetime of Cora May Smith, later Cora M. Smith Morris, the monthly installments on Allan L. Smith's war risk insurance certificate were paid to her as they became due.   Upon her death the commuted value of the installments then remaining unpaid, ascertained to be $3,892, was paid to the administrator c. t. a. of the deceased soldier.   William R. Smith and Agnes Smith, the deceased soldier's parents, claim the fund as the only surviving persons within the permitted class of beneficiaries under the War Risk Insurance Act.   They further claim that if not entitled to it as such beneficiaries they are entitled to one-half of it as next of kin, the same as if the soldier had died intestate.   Earl A. Morris claims the fund as administrator of the

estate of Cora M. Smith Morris, contending that it passed by the soldier's will to his widow. He further claims that if it did not pass to the widow under the soldier's will the Cora M. Smith Morris estate is entitled to one-half thereof under section 98 of the Decedent Estate Law of this State as it was at the time of the soldier's death.

It is conceded that the application made by the soldier and the certificate issued to him were in the usual form and, therefore, contained the following clause: " Subject in all respects to the provisions of such Act [of 1917], of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted; all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract." Under the War Risk Insurance Act of October 6, 1917 (40 U. S. Stat. at Large, 409, chap. 105), the soldier had the right to change the beneficiary named in the certificate, either during his lifetime or by will, but was restricted in his designation to a permitted class consisting of a spouse, child, grandchild, parent, brother or sister. He could name any or all of them, but he must keep within that class. Later and by the amendment of December 24, 1919 (41 U. S. Stat. at Large, 371, chap. 16), this permitted class was enlarged to include uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law. By the act of June 7, 1924 (43 U. S. Stat. at Large, 625, chap. 320), the said War Risk Insurance Act was revised and re-enacted as the World War Veterans' Act, and section 303 thereof, retaining the restriction as to the permitted class of beneficiaries, provided that upon the death of the beneficiary designated in the certificate the present value of the installments then remaining unpaid be paid to the estate of the insured if there were no persons surviving within the permitted class. By the amendment of March 4, 1925 (43 U. S. Stat. at Large, 1310, chap. 553; U. S. Code, tit. 38, § 512), the present value of the installments remaining unpaid upon the death of the designated beneficiary was made payable " to the estate of the insured," without restriction and without any reference to a permitted class of beneficiaries. This amendment by its terms was made effective as of October 6, 1917, the date of the original act. The contract between the soldier and the United States government was by its express terms made subject to the provisions of the original act, of any amendments thereto, and of all regulations thereunder, then in force or thereafter adopted. The soldier's beneficiaries, next of kin and legatees could acquire no right under the certificate which did not come through him. The right to amend the statute under

which the certificate was issued, and to modify the terms of the contract in accordance with the provisions of such amendment, was expressly reserved by the government and expressly consented to and accepted by the insured. When passed and approved or " adopted," such amendment, and the provisions thereof, became a part of the contract still pending, and as such became effective as against the parties to the contract and the beneficiaries, next of kin and legatees of the soldier. The rights and interests of such beneficiaries, next of kin and legatees are subject to any and all amendments of the act under which the certificate was issued, whether those amendments are adopted before or after the soldier's death. (*White* v. *United States*, 270 U. S. 175; *Matter of Storum*, 220 App. Div. 472.) It is well established that under one of these war risk certificates the beneficiary does not acquire, upon the soldier's death, any fixed or vested right that cannot be modified or defeated by subsequent legislation, and that under the amendment of March 4, 1925, the present value of the installments remaining unpaid upon the death of the beneficiary is to be paid to the deceased soldier's estate for distribution, either pursuant to 'the terms of his will, or to his next of kin, under, and pursuant to, the provisions of the Decedent Estate Law of this State as of the date of the soldier's death. (*White* v. *United States*, 270 U. S. 175; *Matter of Storum*, 220 App. Div. 472; *Matter of Ryan*, 129 Misc. 248; affd., 220 App. Div. 835; *Matter of Tiffany*, 137 Misc. 627; *Matter of Ogilvie*, 291 Penn. St. 326.) In *White* v. *United States* (*supra*) it was held that a certificate, by its terms made subject to the provisions of the War Risk Insurance Act and to any future amendments thereof, was valid and that the beneficiary named in the certificate had no vested right in the installments payable thereunder that would prevent the letting in of another beneficiary named in the soldier's will, ineligible at the time the will was established, but made eligible by an amendment passed after the soldier's death. In *Matter of Storum* (*supra*) the soldier died intestate and it was held that the beneficiary did not have a vested interest in the proceeds of the certificate, and that the amendments of the act, including the amendment of March 4, 1925, were valid and effective against the beneficiary and her next of kin. It was further held that under this amendment the fund should be distributed as unbequeathed personal property of the estate and paid to the soldier's next of kin as of the date of his death, one-half thereof to the father and the remaining one-half thereof to the widow's estate, under the Decedent Estate Law of the State as it then was. In *Matter of Ryan* (*supra*) the soldier died intestate and it was held that the proceeds of the certificate should be paid

to the widow as sole distributee of the soldier rather than to the aunts and uncles who claimed it as beneficiaries under the provisions of the War Risk Insurance Act and its amendments. In *Matter of Ogilvie* (*supra*) it was held that the fund was payable to the soldier's *fiancée* as sole legatee under his will rather than to the sole legatee under the beneficiary's will or to the soldier's next of kin. In *Matter of Tiffany* (*supra*) the fund was held payable to the soldier's sister as residuary legatee under his will. In each of these cases it was held that the rights and interests of the parties were controlled not only by the act of 1917, but as well by all subsequent legislation amendatory thereof, and, in the *Storum, Ryan, Tiffany* and *Ogilvie* cases, including the act of 1925, by its express terms made effective as of October 6, 1917. Under these cases it is clear that the parents of the deceased soldier did not acquire any rights or interests under the certificate, as surviving persons within the permitted class of beneficiaries, which were not taken away by the amendment of March 4, 1925. That amendment was valid and effective as against them and their claims to this fund as such beneficiaries under the War Risk Insurance Act must be denied.

*Salzer* v. *United States* (300 Fed. 764; affd., Id. 767), urged on behalf of the parents, was decided prior to the amendment of March 4, 1925, and, therefore, cannot be considered an authority thereunder. *Matter of Sabin* (131 Misc. 451), also urged on behalf of the parents, was decided upon the mistaken theory that a war risk insurance certificate is the same as an ordinary commercial life insurance policy, as to the rights and interests acquired. *White* v. *United States* (*supra*) and *Matter of Storum* (*supra*) effectively dispose of that contention.

There seems to be no doubt that the fund, paid under the provisions of the amendment of March 4, 1925, to the estate of the insured, is to be deemed a part of the soldier's estate as of the date of his death and that it is generally to be treated as any other part of the estate. (*Matter of Storum*, 220 App. Div. 472; *Matter of Ryan*, 129 Misc. 248; affd., 220 App. Div. 835; *Matter of Ogilvie*, 291 Penn. St. 326; *Matter of Tiffany*, 137 Misc. 627.) In *Matter of Ogilvie* (*supra*) the fund was held to be subject to testamentary disposition and was awarded to the soldier's *fiancée* as sole legatee under his will. Mr. Justice WALLING said: " Being a part of the insured's estate and vesting as such at his death, it vests, in the absence of a testamentary disposition, in his then next of kin, under the intestate laws. As a part of the insured's estate, however, it was subject to his testamentary disposition and by his will in the instant case vested in Margaret Joy Houston, sole

legatee." In *Matter of Tiffany* (*supra*) it was held that the residuary clause in the soldier's will carried the fund to the soldier's sister who was the residuary legatee. McNAUGHT, S., said: " A general residuary clause in a will carries every interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed and an intention to exclude must appear from other parts of the will. (*Floyd* v. *Carow*, 88 N. Y. 560; *Lamb* v. *Lamb*, 131 id. 227; *Leggett* v. *Stevens*, 185 id. 70, 79; *Matter of Barrett*, 132 App. Div. 134; *Wechsler* v. *Drey*, 203 id. 692.) " That is undoubtedly a correct statement of the general rule applicable in most instances, but it is a rare rule to which there is no exception. The rule is based upon presumption as to the intention of the testator and if its application leads to an impossible result the presumption does not hold. In the *Ogilive* case and in the *Tiffany* case the beneficiary named in the certificate and the sole or residuary legatee named in the will were different persons. The presumption against intestacy and the presumption that it was intended to include in the sole or residuary bequest, under its general language, the proceeds of the war risk certificate could be and were applied without leading to an unnatural result. But when the beneficiary and the sole or residuary legatee are one and the same person, as in the case at bar, to apply these presumptions leads to an intention that is clearly contrary to sound reason. It leads to an intention that is manifestly absurd, and I believe that it is true that no presumption or rule of construction is controlling when its application would have that effect. Under the statute the commuted value of the installments remaining unpaid at the death of the beneficiary is to be paid to the soldier's estate. So this fund does not come into being until the beneficiary's death. How can the fund, which cannot come into being until the beneficiary's death, pass under the soldier's will to that beneficiary? It is manifestly impossible. There can be no presumption that the testator intended to do that which could not in any event be done. It is rather to be presumed that he had no intention of trying to do the impossible and that he, therefore, did not intend the bequest to the beneficiary to include the fund which could be brought into being only by the beneficiary's death. In the case at bar the soldier by his will leaves the residue of his estate, after the payment of his debts, to his wife, not to his wife's estate. In no event could the war risk certificate fund be paid to her because she is also the beneficiary named in the certificate and her death is a condition precedent to the existence of the fund. It seems to me that it would be absurd to hold that the soldier intended to give and bequeath this fund to her. It likewise seems highly

improbable that he intended to bequeath it to his wife's second husband and to her nephews, to the exclusion of his own father and mother. Such an intention would be unusual, unnatural, and is not to be presumed. I believe that this war risk insurance fund is manifestly excluded from being carried by the bequest herein to Cora May Smith.

I hold (1) that William R. Smith and Agnes Smith, the deceased soldier's parents, are not entitled to this fund as beneficiaries under the War Risk Insurance Act; (2) that the said fund does not pass to the estate of Cora M. Smith Morris under the soldier's will; (3) that as to this fund the soldier died intestate; (4) that it is distributable under the provisions of section 98 of the Decedent Estate Law of this State as it was at the time of the soldier's death, and that William R. Smith, the soldier's father, is entitled to one-fourth thereof, Agnes Smith, the soldier's mother, to one-fourth thereof, and the estate of Cora M. Smith Morris, the soldier's deceased wife, to one-half thereof.

Submit decree accordingly.