[1] Reported in 245 N.W. 636, 247 N.W. 679.
The appeal is from a judgment.
There is no dispute as to facts. They are, in brief: Gustaf Emil Erickson was a soldier in the army of the United States during the world war. He took out war risk life insurance in the sum of $10,000, naming as the beneficiary his twin brother, Erick. On November 13, 1918, Gustaf died testate, a resident of Kanabec county, this state. He was not married. His parents predeceased him. He left surviving besides his twin brother, Erick, two brothers and two sisters. His estate was probated, and certain bequests made in his will were paid. The residue of his estate was by the will given to Erick. After Gustaf's death the monthly instalments of his war risk insurance were paid to Erick, until his death on April 2, 1924. Erick died testate, leaving a wife and four children. Prior to his death one of the other brothers had died intestate, leaving a wife and two children. After Erick's death, Ernest A. Spongberg was appointed by the probate court of Kanabec county as administrator de bonis non with the will annexed of the estate of Gustaf Emil Erickson, and to him was paid $7,466, the commuted balance of the war risk insurance. The probate court ordered this sum to be distributed to Erick's wife and children. On appeal to the district court distribution was ordered of one-fifth to each of the five brothers and sisters of Gustaf in being at his death, the one-fifth apportioned to the two brothers who subsequently died going to their children. Under that distribution each of the four children of Erick receive one-twentieth.
The children and widow of Erick contend that by the will of Gustaf they are made the beneficiaries and can claim the whole fund as the sole distributees. The respondents claim that on the death of Erick, the beneficiary named by Gustaf, the balance of the insurance is payable to the representative of the estate of Gustaf, to be distributed by him to those who at the time of Gustaf's death under our statute of descent would share his personal estate. The contention of respondents is that the war risk insurance never becomes a part of the estate of the insured; that the government designed *Page 652 
it for his dependents after his death; and that the provision giving his representative the right to receive the same is simply as a conduit through which the government secures a distribution thereof to the soldier's dependents — he holds the funds as a trustee for the insured's next of kin.
In In re Estate of Hallbom, 179 Minn. 402, 405,229 N.W. 844, 345, we held that the war risk insurance of a deceased soldier does not become a part of his estate, and "that the payment of the funds to the estate of the insured is merely a matter of procedure, and the representative of the estate is to distribute it only to persons included 'within the permitted class.' The persons who would receive the money receive it as beneficiaries under the policy and not as heirs at law."
Although by the act of March 4, 1925 (38 USCA, § 514) the commuted amount due on the death of the designated beneficiary is payable to the estate of the insured, it bears the earmarks of an insurance fund going to the dependents of the insured under the intestacy law of the state or his will, free of the claims of his creditors (In re Estate of Harris, 179 Minn. 450,229 N.W. 781). That part of the act of March 4, 1925, here material reads:
"If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award."
The effect of this statute upon the distribution of the residue of the war risk insurance, upon the death of the beneficiary named in the certificate, where the insured dies intestate, was determined in Singleton v. Cheek, 284 U.S. 493,52 S. Ct. 257, 76 L. ed. 419, 81 A.L.R. 923. *Page 653 
The following decisions sustain the proposition of appellants that a beneficiary of war risk insurance, after the death of the beneficiary named in the certificate, may he designated by the last will of the insured. Ogilvie's Estate, 291 Pa. 326,139 A. 826, where the insured's father was named the beneficiary in the policy and was paid the monthly instalments until his death, two years after the death of the son, and after the death of the father the monthly instalments were paid to the grandmother until her death in 1925, and thereafter the fiancee of the insured proved his will wherein she was named sole beneficiary. Her claim to the fund was sustained as against the claim of stepmother and as against that of the aunt and uncles of the insured. So also in In re Tiffany's Will,137 Misc. 627, 244 N.Y. S. 255, where the insured had by will given all his estate to his mother to have the use and income thereof for life and the residue to a sister, and in his war risk insurance certificate his mother was named beneficiary, and the surrogate held the commuted insurance after the mother's death should go to the sister. Identically the same situation is found in Coleman v. Harrison, 168 Ga. 859,149 S.E. 141; Gunnv. Yancey, 225 Mo. App. 1231, 33 S.W.2d 1029; Bradshaw v. Littlefield, 139 Or. 672, 11 P.2d 288. It will be noted that in the eases just cited the beneficiary named in the war risk insurance certificate was not the one designated in the last will of the insured as his residuary legatee. But in In re Smith's Estate, 141 Misc. 651., 253 N.Y. S. 825, 830, we have just that situation, the same as in the instant case. The surrogate calls attention to the Ogilvie and Tiffany cases, and to this statement in the latter [141 Misc. 656]:
"A general residuary clause in a will carries every interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed and an intention to exclude must appear from other parts of the will."
The statement is approved as a general rule, but the decision continues [141 Misc. 656]:
"In the Ogilvie case and in the Tiffany case the beneficiary named in the certificate and the sole or residuary legatee named in the *Page 654 
will were different persons. The presumption against intestacy and the presumption that it was intended to include in the sole residuary bequest, under its general language, the proceeds of the war risk certificate could be and were applied without leading to an unnatural result. But when the beneficiary and the sole or residuary legatee are one and the same person, as in the case at bar, to apply these presumptions leads to an intention that is clearly contrary to sound reason. It leads to an intention that is manifestly absurd, and I believe that it is true that no presumption or rule of construction is controlling when its application would have that effect. Under the statute the commuted value of the installments remaining unpaid at the death of the beneficiary is to be paid to the soldier's estate. So this fund does not come into being until the beneficiary's death. How can the fund, which cannot come into being until the beneficiary's death, pass under the soldier's will to that beneficiary? It is manifestly impossible. There can be no presumption that the testator intended to do that which could not in any event be done. It is rather to be presumed that he had no intention of trying to do the impossible and that he, therefore, did not intend the bequest to the beneficiary to include the fund which could be brought into being only by the beneficiary's death. In the case at bar the soldier by his will leaves the residue of his estate, after the payment of his debts, to his wife, not to his wife's estate. In no event could the war risk certificate fund be paid to her because she is also the beneficiary named in the certificate and her death is a condition precedent to the existence of the fund."
The court held that notwithstanding the will the commuted fund should be distributed as if there had been no will, that is, under the intestacy statute of the state. The logic of Surrogate Grant (In re Smith's Estate, 141 Misc. 651,253 N Y S. 825) seems to us convincing that the testator could not have intended that the residuary clause of his will in favor of Erick should include the commuted balance of his war risk insurance, for he had named Erick the beneficiary, and the commuted balance could only come *Page 655 
into existence upon Erick's death. Gustaf's will does not give the residue to Erick's estate.
We are therefore of the opinion that the commuted balance in the hands of the administrator de bonis non of Gustaf's estate is to be distributed as if he had died intestate; that testator's intention could not have been that the will should operate on the fund that came into existence through the death of the beneficiary named in the certificate.
The judgment is affirmed.