574

*In the Matter of the Estate of* LOUIS SATOLLIE VERCHOT, *Deceased.*

TIM HEALY, *as Administrator, et al., Appellants,* v. BELLINGHAM BRANCH SEATTLE-FIRST NATIONAL BANK OF BELLINGHAM, *as Administrator, Respondent.*[1]

[1]Reported in 104 P. (2d) 490.

*Tim Healy, J. W. Kindall,* and *Carl F. Roehl,* for appellants.

*John R. Strickland,* for respondent.

STEINERT, J.—This is an appeal by the administrator of the estate of an intestate decedent, and by the next of kin of the same decedent, from that part of a decree of distribution wherein the commuted value of the unpaid balance of a war risk insurance policy issued to decedent was ordered to be distributed to the administrator with the will annexed of the estate of decedent's father.

The facts of the case are not in dispute. Louis Satollie Verchot, a soldier in the United States army during the world war, was issued a yearly renewable term war risk insurance policy in the amount of ten thousand dollars. He named his mother, Eugenie Verchot, beneficiary, and his father, Louis Verchot, alternate beneficiary, in the certificate of insurance. The insured, a bachelor, died intestate in 1919, leav-

ing his mother and father as his only heirs. Installments were accordingly paid on the policy by the United States government to the mother, as beneficiary, until her death on November 6, 1935, and thereafter to the father, Louis Verchot, as alternate beneficiary, until his death on May 6, 1936.

The mother had died testate, leaving all of her property to her husband, Louis Verchot, father of the insured. The father likewise died testate, leaving all of his property to specific beneficiaries and to a residuary beneficiary, none of whom was next of kin of any of the Verchots. The commuted value of the balance of the war risk insurance, amounting to $1,958, was paid by the United States government on September 28, 1937, to the administrator of the estate of the insured.

At the final hearing in the insured's estate, on March 21, 1939, the court entered a decree distributing these funds, which were the sole assets of that estate, to the administrator with the will annexed of the father's estate for distribution as ordinary assets of the latter estate. If the decree is upheld, the funds in question will be distributed to a parochial school, the residuary legatee named in the will of the insured's deceased father.

Counsel are agreed that the questions involved upon this appeal are the following:

(1) Does the commuted value of war risk insurance of an intestate deceased insured person (whose only heirs are his mother and father), pass to the insured's next of kin determined (a) as of the date of the insured's death [affirmed by the superior court], or (b) as of the date of the distribution of the insured's estate [negatived by the superior court]?

(2) Do the wills of the insured's mother and father (beneficiaries under the policy and sole heirs of the

insured) operate upon the war risk insurance [affirmed by the superior court] ?

(3) Is payment limited to the "permitted classes" referred to in the Federal statute [negatived by the superior court] ?

We will consider questions 1 and 3 together. Question 2 will be discussed separately.

Upon the two questions considered together, it is appellants' position that the insurance proceeds should be distributed to the intestate insured's next of kin determined as of the date of the distribution of such funds, upon the theory that the insured's estate is a mere conduit for passing the funds to those persons within the permitted classes of beneficiaries who, under the state intestacy laws, are entitled to the personal property of the deceased insured.

Inasmuch as the war risk insurance involved in this case is a product of the acts of Congress, it is well that we have before us the pertinent Federal statutes.

The Act of March 4, 1925, c. 553, § 12, 43 Stat. 1308, as amended by the Act of July 3, 1930, c. 863, § 1, 46 Stat. 1016, 38 U. S. C. A. (Sup.), § 511, provides in part as follows:

"Yearly renewable term insurance shall be payable only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law, or sister-in-law, or to any or all of them."

From a reading of that entire section, it is apparent that this provision has reference solely to the permitted classes of persons from which the insured may designate the beneficiary of his yearly renewable term insurance.

The situation with which we are here particularly concerned is covered by the specific provisions of § 14 of the Act of 1925 (c. 553, § 14, 43 Stat. 1310, 38 U. S. C. A., § 514), which read:

"If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid *to the estate of the insured* the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award." (Italics ours.)

In the case of *In re Cross' Estate,* 152 Wash. 459, 278 Pac. 414, decided in 1929, the identical question here involved was presented. After a thorough consideration of the matter, this court receded from the position that it had theretofore thrice taken, in successive appeals involving the same estate (*In re Cross' Estate,* 147 Wash. 441, 266 Pac. 711; *In re Cross' Estate,* 147 Wash. 699, 266 Pac. 712; *In re Cross' Estate,* 148 Wash. 422, 269 Pac. 339), and held on the final appeal that

". . . the proceeds of the insurance policy should be distributed, in the estate of LeRoy W. Cross [the insured], to those living *at the time of the distribution who come within the permitted class,* in the order of their priority under the laws of the state of Washington, they to receive as *beneficiaries* under the policy, and *not as heirs at law.*" (Italics ours.)

That was an *En Banc* decision, and we would be constrained to follow it were it not for the fact that, since the date of that decision, the supreme court of the United States has considered the same question and has arrived at a contrary conclusion. *Singleton v. Cheek,* 284 U. S. 493, 76 L. Ed. 419, 52 S. Ct. 257, 81 A. L. R. 923 (decided February 15, 1932).

In that case, wherein the facts were analogous to those in the case at bar, the supreme court of the United States pointed out that the statute applicable

to such cases had been amended in a very important respect. The statute in existence prior to 1925 provided that, if a person to whom such yearly renewable term insurance was awarded died, or his rights were otherwise terminated after the death of the insured, but before all of the two hundred and forty monthly installments had been paid, then the monthly installments payable and applicable should be payable to such person or persons *within the permitted class of beneficiaries* as would, under the laws of the state of residence of the insured, be entitled to his personal property in case of intestacy. 41 Stat. 376.

That provision, however, was amended by § 14 of the Act of 1925 (c. 553, § 14, 43 Stat. 1310, 38 U. S. C. A., § 514), which the supreme court quoted exactly as it has been set out above. The court, through Justice Sutherland, then disposed of the matter in the words of the following paragraph:

"By that amendment, the rule, which, upon the happening of the contingencies named in the prior acts, limited the benefit of the unpaid installments to persons within the designated class of permittees, was abandoned, and 'the estate of the insured' was wholly substituted as the payee. All installments, whether accruing before the death of the insured or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the insured as of the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary. The state courts, with almost entire unanimity, have reached the same conclusion."

That decision is directly in point, and is conclusive of these four propositions: (1) The restriction of payment to "permitted classes," after the death of the named beneficiary, no longer obtains. (2) All install-

ments of such insurance which accrue before the death of the insured or after the death of the beneficiary become assets of the estate of the insured as of the instant of the insured's death. (3) Such assets are to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of the insured's residence. (4) Such heirs are to be determined as of the date of the insured's death, and not as of the date of the death of the beneficiaries.

Since we are here concerned with the construction of Federal statutes, the decision of the supreme court of the United States is authoritative and is binding upon us. *Aberdeen Savings & Loan Ass'n v. Chase,* 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232.

Consequently, the decision of this court in the case of *In re Cross' Estate,* 152 Wash. 459, 278 Pac. 414, in which a different result was reached, must be, and hereby is, overruled. Incidentally, it may be stated that there is a practical unanimity of authority upon the propositions established by the *Singleton* case. Access to the cases may be gained through reference to 6 C. J. S. 515, 519, § 85, and 97 A. L. R. 1308.

The second question involved in this appeal is whether the wills of the father and mother, the sole heirs of the insured, and the beneficiaries under the policy, operate upon the war risk insurance.

It is appellants' position that the funds did not pass by those wills because (1) such funds are incapable of bequest, and (2) the wills should be considered as not having mentioned the insurance. In other words, they contend that the mother and father died intestate as to those funds.

It is to be kept in mind that the question here is not whether a *beneficiary* under a war risk insurance certificate may bequeath the balance of the fund remain-

ing after his death, but whether the *distributee* of the insured's estate has the right to bequeath it. The fact that the distributee is also the beneficiary under the policy is merely a coincidence; it is not a controlling consideration.

It may be conceded that the Congress of the United States, having full control over war risk insurance, could have limited the benefit of such funds to certain classes of persons, and could have restricted, or even negatived, any passing of title thereto either by will or through the laws of descent and distribution. But Congress did not do that. On the contrary, by the Act of 1925 (43 Stat. 1310, 38 U. S. C. A., § 514), as construed by the supreme court of the United States, it was provided that the commuted value of the unpaid installments of such insurance becomes an asset of *the estate of the insured* as of the instant of his death, and is to be distributed to his heirs in accordance with the laws of intestacy of the state of his residence. When, therefore, the funds have been paid into the insured's estate, the state law of descent and distribution becomes operative under the formula provided by the Federal act.

We are not here concerned with the right of the *insured* to bequeath such funds. It is conceded that he died intestate, and that his mother and father were his only heirs at law. It is also immaterial here whether the mother be considered as having died testate or intestate, for in either event her husband, father of the insured, was her sole heir. We have therefore to consider only the right of the father to pass the funds by will.

We have no case from this state directly in point upon the immediate question. However, while there are a few decisions from other states to the contrary (*In re Knight's Estate*, 226 Mo. App. 1042, 48 S. W. (2d)

71; *State ex rel. Lankford v. Fidelity & Deposit Co.,* 228 Mo. App. 953, 74 S. W. (2d) 904; 232 Mo. App. 979, 123 S. W. (2d) 552), the great weight of authority is that, although the beneficiary, as such, under a war risk certificate of insurance, has no such interest in payments maturing after his death as may be bequeathed, nevertheless, when the beneficiary also has the status of a distributee of the estate of the insured, the latter status will support the distributee's right to bequeath his interest in the insurance fund. *Hansbarger v. Spangler,* 117 W. Va. 373, 185 S. E. 550; *In re Hall,* 205 N. C. 241, 171 S. E. 61; *Terry v. Rogers,* 168 Va. 25, 190 S. E. 168; *First Nat. Bank v. Forester,* 223 Ala. 218, 135 So. 167; *Wade v. Wade,* 192 Ark. 7, 90 S. W. (2d) 214.

This rule fits in with, and is the natural concomitant of, the generally accepted rule that, on the death of an intestate, those entitled to his personal property as his heirs or distributees acquire a vested equitable right in and to the property of the deceased, subject to the satisfaction of all debts, charges, and expenses of the administration, of the intestate's estate, and on final distribution of his estate the title of the distributees relates back to the intestate's death. 18 C. J. 878 *et seq.,* § 136; 16 Am. Jur. 786 *et seq.,* §§ 20, 21.

This court has always recognized that the right of heirship, or the right of "inheritance" as used in the law of descent, applies as well to personalty as it does to real estate, and that under both Rem. Rev. Stat., § 1364 [P. C. § 9861] (relating to the distribution of personalty), and § 1366 [P. C. § 9863] (relating to real property), the estate vests immediately upon the death of the ancestor in the heir or devisee entitled thereto, subject only to the rights of creditors. *In re Turner's Estate,* 191 Wash. 145, 70 P. (2d) 1059. While the *title* to personal property does not immediately vest in the heir, his *interest in the estate* does.

We therefore adopt the rule heretofore stated as being supported by the weight of authority, and hold that, where a beneficiary in a certificate of war risk insurance also has the status of a distributee of the estate of the insured, he may, as distributee, bequeath his interest in the insurance fund.

Appellants' final contention is that, in any event, the language of the wills of the insured's father and mother does not cover the insurance fund.

For reasons already stated, we need not consider the will of the mother. Whatever interest she may have had in the fund clearly passed to her husband, the father of the insured.

The pertinent provision of the father's will reads:

"All the rest, residue and remainder of my estate I give, devise and bequeath unto The Catholic Assumption School of Bellingham, Washington."

That the testator by that language intended to dispose of any and all interests capable of being bequeathed by him, would appear to be too clear to require discussion. The language is capable of but one interpretation, namely, that the testator intended to, and did, leave all the residue and remainder of his property, of whatever description, to the legatee and devisee therein specifically named.

The residuary clause of a will is just as much a part of the will as any other provision contained therein, and a disposition of the property to which it applies is just as effective as a disposition pursuant to any other provision. *In re Butler's Estate*, 129 Wash. 638, 225 Pac. 629.

The test of power of disposition by a residuary clause is whether the property belonged to the testator, and not whether the testator knew that the property was his. The legal effect of such a clause is to cover everything capable of being passed by will which is not

otherwise well disposed of, and includes such property as the testator may have forgotten or overlooked, or to which he may not have known that he had title. 69 C. J. 419, §§ 1477, 1478; 28 R. C. L. 296, § 272.

Appellants rely upon the following cases: *In re Smith's Estate,* 141 Misc. 651, 253 N. Y. Supp. 825; *In re Henry's Estate,* 153 Misc. 208, 275 N. Y. Supp. 454; *In re Baker's Estate,* 164 Misc. 622, 1 N. Y. Supp. (2d) 72; and *Spongberg v. Lidstrom,* 187 Minn. 650, 245 N. W. 636, 247 N. W. 679.

In the *Smith* and *Spongberg* cases, the decisions involved the construction of the will of the insured. That is not the situation here. In this case, the insured died intestate, and the question here is whether the fund passed by the will of the distributee of the insured's estate. In the *Henry* case, and also in the *Baker* case, the will of the insured's distributee was involved, but those decisions were rested upon findings of absence of intention on the part of the testator to include the funds in the residuary clause. Special circumstances were present in those cases which led to those results.

In the case at bar, there is nothing to indicate that it was not the intention of the testator to bequeath the fund in question to the residuary legatee in the will. On the contrary, all the circumstances, it seems to us, support the usual presumption that the residuary clause carries with it every interest, whether known or unknown, immediate or remote, unless such clause by express provision, or by necessary implication, excludes some particular fund or interest of the estate.

The judgment is affirmed.

BLAKE, C. J., MAIN, MILLARD, ROBINSON, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BEALS, J. (dissenting)—During the summer and early fall of 1917, the Congress of the United States had

urgent occasion to consider the matter of financial protection to the members of the armed forces of the United States who should suffer disability in line of duty, and to the families of those who should lose their lives. The Congress provided for what has been known as "war risk insurance," stating in the act that the law was enacted in order to give to every member of the armed forces "greater protection for themselves and their dependents" than was provided by previous legislation. The underlying purpose of the act, then, was to protect service men and their dependents.

After the close of the war, the act was necessarily amended, the classes of permitted beneficiaries greatly enlarged, and other new elements introduced. Even to this day, however, it is recognized that the proceeds of policies of war risk insurance possess some peculiar characteristics, and enjoy the protection of the law to a considerable degree. It has been held, for instance, by the supreme court of Nebraska, in the case of *State ex rel. Sorensen v. Security Bank,* 121 Neb. 521, 237 N. W. 620, that the proceeds of such insurance is money of the United States until it reaches the person entitled thereto, and that money paid to the administratrix of the insured, and by her deposited in a bank which subsequently failed, may be recovered in full from the assets of the insolvent institution, being entitled to priority of payment under Federal statutes.

In my opinion, this court correctly decided the question presented *In re Cross' Estate,* 152 Wash. 459, 278 Pac. 414, in holding that the proceeds of war risk insurance paid by the United States to the administrator of the estate of the insured veteran should be distributed to those heirs of the insured living at the time of the distribution of the money and entitled to take as heirs at law of the insured.

It is, of course, true, however, as observed in the

majority opinion, that the supreme court of the United States, in the case of *Singleton v. Cheek,* 284 U. S. 493, 76 L. Ed. 419, 52 S. Ct. 257, 81 A. L. R. 923, held that the proceeds of war risk insurance coming into the estate of the insured because of the death of the beneficiary or beneficiaries prior to payment of the entire amount of the insurance, should be distributed to the heirs of the insured, such heirs to be determined as of the date of the death of the insured. I agree with the majority in holding that this court is bound by the decision of the supreme court of the United States, and that the opinion of this court *In re Cross' Estate, supra,* must therefore be overruled, in so far as the same is in conflict therewith. The rule laid down in the *Singleton* case is not in accord with the spirit of the statute, as, under the rule, thousands of dollars of war risk insurance have been paid to persons nowise related to the insured soldier, and diverted from his dependents and kinfolk, for whose benefit and protection the law was enacted.

I am not, however, in accord with the opinion of the majority in holding that the beneficiary of such a policy may, by will, bequeath money due under the policy but not paid to the beneficiary prior to his death. I concede that the majority rule is otherwise, but I am so strongly of the opinion that the minority rule is the better, that, for my part, I am convinced that the latter rule should be followed by this court.

The underlying purpose of war risk insurance, as declared by the Congress, was the protection of the insured and his dependents. This is clear not only from that portion of the act above quoted, but from other provisions of the law protecting the proceeds of war risk insurance against assignment and claims of creditors. Of course, payments made to a beneficiary become absolutely his property, but in my opinion, there

is no basis in the law for holding that such a beneficiary can by his will divert such portion of the insurance money as still remains in the possession of the government, from the heirs at law of the deceased veteran, who was, by the original policy, insured for his own protection and for the protection of his dependents.

In the opinion of the majority, the two cases which, in my opinion, state the better rule, are cited, as well as the more numerous cases laying down the rule which the majority declare to be the law in this state. In the first of the two cases cited, *In re Knight's Estate*, 226 Mo. App. 1042, 48 S. W. (2d) 71, it appeared that the soldier was insured for ten thousand dollars, naming his mother and a half-brother as beneficiaries. The soldier died April 14, 1918, leaving, beside his mother and half-brother, three maternal aunts. Installments of the policy were paid to the mother and half-brother in equal shares until the death of the mother, and after her death, to the brother alone. After the death of the insured, his mother married a second time, and upon the death of the insured's brother, it appeared that the latter had, by his will, bequeathed all unpaid installments of the insurance money to one of his aunts. The balance of the proceeds of the insurance was then, by the Federal government, paid into the estate of the insured, the trial court distributing the same one-third to the surviving husband of the mother of the insured, and the remainder to the insured's aunts, who were sisters and heirs of the insured's mother. If the rule which it seems to me is the correct one had been adopted by the supreme court of the United States, the man whom the mother of the insured married after the insured's death would not have received any portion of the insurance, and in my opinion, he had no right to receive any portion thereof, and such proceeds would have been paid to the maternal aunts of the veteran, who,

in justice and equity, and it seems to me, in law, were entitled to receive the same. In any event, the Missouri court held that the half-brother of the insured and the beneficiary under his policy had no such vested interest in the unpaid installments of the insurance money as would authorize him to dispose of that money by will. The money was still in the possession of the Federal government, the beneficiary could not assign it, doubtless it could not be reached by judicial process and applied to the payment of the beneficiary's debts, and, in my opinion, the court rightly held that he could not dispose of it by will.

In another Missouri case, *State ex rel. Lankford v. Fidelity & Deposit Co.*, 228 Mo. App. 953, 74 S. W. (2d) 904, it was again held that a beneficiary under a policy of war risk insurance had no vested interest in unpaid installments thereof, and could not dispose thereof by will. Certain Federal cases are cited in support of this proposition.

On this phase of the case, I am constrained to dissent from that portion of the majority opinion which holds that Louis Verchot, the father of the insured, could by his will make a valid testamentary disposition of the installments of the policy of war risk insurance issued to Louis Satollie Verchot, which installments had not been paid to the father, Louis Verchot, during his lifetime. As to this matter, we are not bound by any decision of the supreme court of the United States, but are free to declare the law as we understand it.