In the Matter of the Estate of CLARENCE LEWIS YARTER HENRY, Deceased.

Surrogate's Court, Oswego County, September 17, 1934.

*Albert Orenstein,* for the accounting administratrix.

*Floyd W. Annabel,* for the claimant, administrator of decedent's father.

MOREHOUSE, JR., S. War risk insurance in the amount of $10,000 was issued upon the life of the decedent, as " Clarence Lewis Henry," February 2, 1918, while he was in the military service, stationed at Fort Oglethorpe, Ga. In his application he named himself as beneficiary. After his enlistment, prior to his application for insurance, and on August 28, 1917, he executed a will which has heretofore been admitted to probate in this court, under the terms of which he named Lewis Sellingham and Mary Sellingham, designated as " my foster parents," as sole beneficiaries. Testator was subsequently killed in action in France, and thereafter and until the death of Lewis Sellingham, February 26, 1933, the Veterans' Administration upon its award paid Lewis Sellingham and Mary Sellingham monthly installments of $28.75 each under the policy of insurance. The monthly payments to Mary Sellingham have continued, and there has been paid to her as administratrix c. t. a. of the testator the sum of $1,819.50 in a lump sum, as the present value of the unpaid monthly installments which would have been made to Lewis Sellingham had he survived for a period of 240 months.

The subject of controversy upon this accounting is the proper distribution of the lump sum payment. The accounting administratrix c. t. a. contends that the fund reverted to the estate of testator, and under the terms of the will passes one-half to Mary Sellingham and one-half to the administrator of the estate of her deceased husband, Lewis Sellingham. On the other hand, the administrator of the estate of George Yarter, the natural father of decedent, claims the entire amount upon the ground that it passed to the father as sole next of kin, and is not subject to the terms of the will.

When the testator was three weeks old, he was abandoned by his parents and lived at the home of his maternal aunt, Mary Sellingham. His parents separated, and his entire care, including support, clothing, education and medical attendance, fell upon his aunt and her husband, with whom he resided until the time of his enlistment. Neither of his parents made any contribution toward these items, and it appears that he never saw or communicated with either parent or with his brother, save on one occasion. There was no legal adoption by the foster parents, and testator used the name of Clarence Lewis Yarter until his enlistment, which was under the name of " Henry," his mother's second husband.

It is evident that the Veterans' Administration has already recognized the validity of the will to pass war risk insurance, in view of its award and payment of monthly installments to the beneficiaries therein named. The disposition of the lump sum is governed by the World War Insurance Act of 1917, as last amended March 4, 1925 (40 U. S. Stat. at Large, 399, 409; 43 id. 1309, 1310; U. S. Code, tit. 38, § 512). Prior to this amendment, payment under these circumstances was directed to the next of kin within a limited class of beneficiaries, but the amended statute, which is retroactive, directs payment " to the estate of the insured," and this has been uniformly construed to mean distribution as of the date of the death of the veteran, and not the date of the death of the beneficiary.

The questions pertinent to this issue are the effect of the substitution of payment " to the estate of the insured " for the former direction of payment to the next of kin within limited degrees, and if such change permits distribution under a will, the efficacy of the testator's will to pass this particular fund. There is some conflict of authorities, or rather in their application, but it is held without conflict that distribution is to be made according to the laws of the domicile of the insured. Few cases of testacy have arisen, but even in the absence of authority, it is not difficult to reach the conclusion that had Congress intended to further limit distribution of the fund after it had reached the estate or legal representative of the insured, it would have so provided; also that distribution according to the laws of the insured's domicile must mean such laws as are applicable to his particular estate; that is, to his distributees in the event of intestacy, or to his beneficiaries if he died testate.

Authorities directly holding that proceeds of unpaid installments of war risk insurance, paid to the estate of the insured, pass to the beneficiaries under his will, are in part as follows: *Matter of Tiffany* (137 Misc. 627; affd., 220 App. Div. 805); *Monzillo* v. *Pelosi* (116 Conn. 266; 164 A. 711); *Matter of Ogilvie* (291 Penn. St. 326; 139 A. 826); *Brown* v. *United States* ([Cal.] 65 F. [2d] 65). In *Matter of Smith* (141 Misc. 651) the court declined to hold that the fund passed under the will of the insured, but based his decision upon the fact that to so hold would award the moneys to the second husband of the insured's wife, a situation that would be unnatural and absurd. In the same manner it might be said here, that it would be unnatural to make payment to the estate of testator's father and thus to his brother, from both of whom he was estranged, rather than to provide for his foster mother and the estate of her husband, to both of whom he owed a debt of gratitude, and whom he made the objects of bounty under his will.

It is further contended that in any event the will does not operate to pass this fund because it was executed before the war risk insurance was effected, and also that at the time of his death, the testator had no interest in the fund because it did not come into existence until the death of the beneficiary, Lewis Sellingham. " Generally, a will speaks as of the date of the death of the testator " (12th Canon of Construction, Jessup-Redfield [1930 ed.], § 490), and a general residuary clause carries every interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed. (*Erwin* v. *Waterbury*, 186 App. Div. 569; *Floyd* v. *Carow*, 88 N. Y. 560; *Lamb* v. *Lamb*, 131 id. 227; *Leggett* v. *Stevens*, 185 id. 70, 79; *Matter of Barrett*, 132 App. Div. 134; *Wechsler* v. *Dray*, 203 id. 692.)

From its inception, testator's contract of insurance vested him with certain property rights: *First*, the absolute right to have installment payments made to such beneficiary as he then named; and *second*, a contingent right of payment of the present value of unpaid installments after the death of a beneficiary. The situation is not altered by the fact that the manner of payment, the amount payable or the recipients might be altered or changed by Congress, even after the death of the testator. The contingent right existed at the date of his death, and for what it might be worth at that date was a part of his estate which passed under his will.

The lump sum payment now in the hands of the administratrix c. t. a. is a part of the estate of the testator, and is payable under the terms of his will, one-half to Mary Sellingham, and one-half to the administrator of the estate of Lewis Sellingham, deceased.