In the Matter of the Estate of CHARLES BAKER, Deceased.

Surrogate's Court, Jefferson County, July 2, 1937.

*Edward H. Bennett* for the petitioner, Ross E. Baker, as administrator of the estate of Albert R. Baker, deceased.

*Howard B. Donaldson* and *G. Wesley Donaldson*, for Howard B. Donaldson, as executor of the last will and testament of Mantha Baker, deceased, the sole legatee and devisee under decedent's will.

GRANT, S. An application is made by Ross E. Baker, as administrator of the estate of Albert R. Baker, a deceased son of said Charles Baker, for letters of administration *c. t. a.* This application is opposed and said letters of administration *c. t. a.* are claimed by Howard B. Donaldson, as executor of Mantha Baker, deceased, sole legatee under the last will and testament of the said Charles Baker, deceased.

Clifford C. Baker, a soldier in the military service of the United States during the World war, died intestate on the 27th day of September, 1918, leaving him surviving as his only next of kin his father, Charles Baker, this decedent. A brother, Albert R. Baker, also survived him, and two nephews, two nieces and a sister-in-law. While in the service he had applied for and had received a war risk insurance certificate under and pursuant to the War Risk Insurance Act of October 6, 1917. In this certificate the soldier's father, Charles Baker, was named as sole beneficiary and he received, as such, payments of $57.50 each month until his death on the 19th day of August, 1922. The benefits under the certificate were then paid to the soldier's brother, Albert R. Baker, until the brother's death on the 5th day of August, 1936. Then, pursuant to the act, as amended and then in effect, the commuted value of the installments remaining unpaid, ascertained to be $1,389, became payable to the estate of the deceased soldier for distribution to his next of kin under and pursuant to the provisions of the Decedent Estate Law of this State as of the date of the soldier's death, that is, to his father, or to his father's estate. (*White* v. *United States*, 270 U. S. 175; *Matter of Storum*, 220 App. Div. 472.)

Upon the soldier's death letters of administration were issued to his father, Charles Baker, and since the father's death, August 19, 1922, there has been no representative of the deceased soldier's estate. The father died leaving him surviving his wife, Mantha Baker, and a son, Albert Baker. Mantha Baker was his second wife and the stepmother of his said son. He left a last will and testament dated November 20, 1920, which was duly admitted to probate in this court on the 15th day of December, 1922, and letters testamentary were duly issued to the executrix named therein, Mantha Baker. The will directed the payment of the testator's

debts and funeral expenses and then in the second, third and fourth paragraphs provided as follows:

"*Second.* I give and bequeath to my wife, Mantha Baker, all personal property, including money in the bank, of which I may die seized and possessed, to be hers absolutely.

"*Third.* I also give and devise to my said wife, Mantha Baker, the house and lot situate in Brownville, Jefferson Co. N. Y., and known as 'Winnie Hooligan' house, the same to be hers absolutely, and in fee.

"*Fourth.* I also give and bequeath to my wife, Mantha Baker, the use during her lifetime of the house and lot owned by me at Brownville, N. Y., and known as the 'Margaret Milan' house, and after the death of my said wife, I give and devise said 'Margaret Milan' house to my son, Albert R. Baker, the same to be his absolutely and in fee."

Mantha Baker died December 10, 1925, leaving a will dated October 10, 1923, which was duly admitted to probate in this court January 30, 1926, and letters testamentary were issued on that day to Howard B. Donaldson.

Albert Baker died intestate August 5, 1936, and letters of administration were duly issued by this court to his son, Ross E. Baker, on the 18th day of December, 1936.

Howard B. Donaldson, as executor of Mantha Baker, deceased, and Ross E. Baker, as administrator of Albert R. Baker, deceased, each claims the appointment as administrator *c. t. a.* of decedent so that he may apply for letters *de bonis non* of the estate of the deceased soldier.

As already appears, this fund of $1,389 is payable to the Clifford Baker estate. It passes through the Clifford Baker estate to the Charles Baker estate and then through the Charles Baker estate, either by the terms of his will to the Mantha Baker estate, or to his next of kin, according to whether he died testate or intestate as to this fund.

There seems to be no residuary clause in the Charles Baker will. This fund if it passes under the will must pass under the paragraph designated as second, which provides: "I give and bequeath to my wife, Mantha Baker, all personal property including money in the bank, of which I may die seized or possessed." The language of this paragraph clearly indicates the testator's intent thereby to dispose of all personal property or interest therein owned by him at the time of his death, whether owned by him at the time of the execution of the will or thereafter acquired by him. This language would undoubtedly carry all such property, known or unknown, immediate or remote, then owned or thereafter acquired by him,

unless manifestly excluded. The intention to include would be presumed. But I doubt if there could be any such presumption as to an interest in personal property never acquired by the testator during his lifetime and not acquired by his estate until nearly two years after testator's death and then only by virtue of a change in the statute not anticipated by him.

It appears here that the soldier's father, this decedent, died August 19, 1922. Under the original War Risk Insurance Act of October 6, 1917 (40 U. S. Stat. at Large, 409), the soldier had the right to change the beneficiary named in the certificate, either during his lifetime or by will, but was restricted in his designation to a permitted class consisting of a spouse, child, grandchild, parent, brother or sister. He could name any or all of them, but he must keep within that class. The act among other things provided: " The insurance * * * shall be payable only to a spouse, child, grandchild, parent, brother or sister * * * or to any or all of them * * *. Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries, but only within the classes herein provided. If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured, be entitled to his personal property in case of intestacy. If no such person survive the insured, then there shall be paid to the estate of the insured an amount equal to the reserve value, if any, of the insurance at the time of his death, calculated on the basis of the American Experience Table of Mortality and three and one-half per centum in full of all obligations under the contract of insurance." Later and by the amendment of December 24, 1919 (41 U. S. Stat. at Large, 371, chap. 16), this permitted class was enlarged to include uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law. By the act of June 7, 1924 (43 U. S. Stat. at Large, 625, chap. 320), the said War Risk Insurance Act was revised and re-enacted as the World War Veterans' Act, and section 303 thereof, retaining the restriction as to the permitted class of beneficiaries, provided that upon the death of the beneficiary designated in the certificate the present value of the installments then remaining unpaid be paid to the estate of the insured if there were no persons surviving within the permitted class. By the amendment of March 4, 1925 (43 U. S. Stat. at Large, 1310, chap. 553; U. S. Code, tit. 38, § 512), the

present value of the installments remaining unpaid upon the death of the designated beneficiary was made payable " to the estate of the insured," without restriction and without any reference to a permitted class of beneficiaries. This amendment by its terms was made effective as of October 6, 1917, the date of the original act. The revision and re-enactment of June 7, 1924, and the amendment of March 4, 1925, were subsequent to decedent's death and, as bearing upon his intention in making his will, cannot be deemed to have been within his contemplation. The statute in effect at the time he executed his will, November 20, 1920, and also at the time of his death, August 19, 1922, was the original act of October 6, 1917, as amended by the amendment of December 24, 1919, and under that act and amendment the soldier was restricted in his designation, either during his lifetime or by his will, to a permitted class consisting of a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law and sister-in-law. He could name any or all of them but he must keep within that permitted class. There was then no intimation of a later revision and re-enactment and amendment authorizing the payment of the commuted value of the unpaid installments to the soldier's estate upon the death or deaths of the designated beneficiary or beneficiaries to be distributed without reference to a permitted class. When he executed his will, Charles Baker, the decedent, was presumed to know the law and his intention naturally must be considered in the light which he had at that time. As the law then was the unpaid portion of the war risk insurance certificate remaining after the death of the last surviving beneficiary was not payable to the soldier's estate for distribution without reference to the permitted class and no interest therein could pass by will except to a beneficiary within the restricted class, at least so long as a member of the restricted class existed. Until after decedent's death there was no change in the law and decedent must be presumed to have understood at the time he made his will and from then until the time of his death that his son's war risk insurance would be paid as required by law and was not, and could not become, a part of his, decedent's, estate and would not, and could not under the law, ever be acquired by him or pass under his will. It must be presumed that he understood that his only interest in this insurance was his right to the monthly payments to which under the law he was entitled and which, under the law, would terminate at his death. With that understanding he could not have intended to bequeath any interest in his son's war risk insurance to his wife. To presume that he had any such intention would be rather absurd and contrary to reason.

*Wayne* v. *Hartridge* (147 Ga. 127; 92 S. E. Rep. 937), cited on behalf of the Mantha Baker estate, seems to me to be clearly distinguishable from the case at bar and not in any way in conflict with the views above expressed. In that case the fund in question resulted from the payment of a claim for " longevity pay " owned by the decedent during his lifetime, although not paid until after his death. He was a cadet at West Point from 1839 to 1843, inclusive. After graduation he served in the United States army until the outbreak of the Civil war, when he entered the service of the Confederacy and became a brigadier-general. After the war he became a resident of Savannah, Ga., and remained such until his death in 1883. Under section 15 of the act of Congress of July 5, 1838, commissioned officers of the United States army received one additional ration per diem for every five years' service in the United States army. This was known as " longevity pay " and was paid to decedent and other officers. In computing the amount due the time spent at West Point as a cadet was not included until the United States Supreme Court handed down its decision in *United States* v. *Watson* (130 U. S. 80). After that decision the government allowed additional " longevity pay " except to such officers as served in the Confederate army, ruling that as to them no additional " longevity pay " could be allowed under the act of March 2, 1867. After the act of Congress of July 6, 1914, in and by which section 3480 of the Revised Statutes of the United States was repealed in part, a claim for this additional " longevity pay " due decedent as an officer in the United States army was filed and allowed and was reported to Congress by the Secretary of the Treasury under the deficiencies appropriation act of July 7, 1884. An appropriation was made to pay the claim and payment was made to the decedent's administrator *c. t. a., d. b. n.* The question arose as to whether decedent died intestate as to this fund or whether it passed under the clause of his will which read as follows: " I hereby give and bequeath to my wife, Adelaide Hartridge Wayne, all of the property real and personal of which I shall die seized and possessed, except the portrait of my mother, by Alexander, which I hereby give and bequeath to my son, Henry N. Wayne." It was held that the " longevity pay " fund passed under the will. HILL, J. (at p. 939) says: " It is the intention of the testator which must control, unless that intention contravenes some rule of law. Civil Code, section 3900. It seems perfectly clear that the testator by his will intended that *all of his property* of which he died seized (except his mother's portrait, which he left to his son) should go to his wife. This included everything he had a right to bequeath

or devise, including the claim for longevity pay. This longevity pay was due to General Wayne at the time of his death, and was withheld from him by the disbursing officers of the United States in his lifetime, under an erroneous construction of the law, as appears from the record. But the act of Congress in 1914 allowed its payment, and the present administrator collected it. For the time payment was withheld it was still a claim and the property of the testator. As was said by the able judge who tried the case and rendered judgment: ' That its value was more or less speculative and dependent on the future attitude of the debtor did not destroy it; it was analogous, in this respect, to a debt barred by the Statute of Limitations.' " The court in that case, it seems to me, very properly held that this claim for " longevity pay " was property of which the testator died possessed and, therefore, passed under the will. I do not see how any other· conclusion could have been reached. In the case at bar we have an entirely different situation. Here the decedent had no claim whatsoever upon the commuted value of the remaining unpaid installments of the war risk insurance certificate of his soldier son at the time of his death, or at any time prior thereto. At that time he had no right thereunder, and never had had any right thereunder, except to receive the monthly payments during his lifetime, and the right to these payments passed upon his death to some other member of the permitted class. His interest in that insurance ceased with his death. During his lifetime he never had any claim or property right therein which could survive his death or which he could dispose of by will. This claim or property right was not created and did not come into existence until nearly two years after decedent's death. So it was not a claim or property which he ever acquired or of which he died " seized or possessed." So far as he was concerned it was an entirely new property right which came into being and was created by statute nearly two years after testator's death. The fact that the amendment creating that right was made effective as of the date of the original act, October 6, 1917, could not affect the testator's intent. Clearly this fund does not constitute personal property of which the testator died " seized and possessed." Clearly there can be no presumption of an intent to include the fund here in question in the bequest made to decedent's wife. The language used would seem to exclude it. If any right or claim whatsoever in or to the soldier's war risk insurance had been owned or acquired by the testator prior to the testator's death, which could possibly have survived the testator's death, I should be inclined to hold that the fund passed under the will. But no such right or claim existed

at or prior to his death. He never acquired or owned during his lifetime any interest, right or claim which could possibly survive his death, and which he could dispose of by will. By no stretch of the imagination could this fund or any interest therein, or title or claim thereto, on the part of the testator be construed as personal property of which he died " seized and possessed." It necessarily follows that there was no intention on the part of the testator to include this fund in the bequest to his wife and that he, therefore, died intestate as to it.

*Matter of Henry* (153 Misc. 208); *Matter of Israelite* (155 id. 259); *Matter of Tiffany* (137 id. 627); *Matter of Smith* (141 id. 651) and *Matter of Ogilvie* (291 Penn. St. 326; 139 A. 826), cited in behalf of the Mantha Baker estate, are not, so far as I can see, inconsistent with the above-expressed holding. In each of those cases the will in question was the will of the deceased soldier, not the will of the deceased soldier's deceased next of kin, and hence affected by the terms of the soldier's contract with his government, of which contract his application for war risk insurance was a part. The soldier in each of these cases had certain rights, interests and claims under his war risk insurance contract. These rights, interests and claims existed during his lifetime. It is true that they were subject to change at the will of his government, but nevertheless they were acquired by him during his lifetime, and, subject to change, were possessed by him at the time of his death. He had certain rights or privileges of disposition by will. Under his contract those rights or privileges might be changed by a statute passed subsequent to his death and might be either increased or diminished, but he nevertheless had a right, interest or claim in and under his war risk insurance certificate which was personal property. That property right, by legislation passed subsequent to his death, ripened into a full right of disposition by will without any restriction or limitation in respect to a restricted class. That legislation was made retroactive and the terms of the contract, of which the soldier's application for insurance was a part, specifically authorized it. In ascertaining the soldier's intent as to what should pass in and by his will due consideration was apparently and properly given to the terms of his contract with his government. In the case at bar the will under consideration is the will of the deceased soldier's deceased next of kin. This deceased next of kin had no contractual relation with the government in reference to the soldier's insurance. He was simply the designated beneficiary to whom the soldier and the government had agreed that the monthly payments should be made until such payments aggregated a certain amount, or until

the designated beneficiary's death. This decedent, during his lifetime, acquired no greater right, interest or claim than to receive these monthly payments. In *Matter of Tiffany* (137 Misc. 627), it was held that the insured had an interest or estate in the proceeds of his insurance during his lifetime and at the time of his death, contingent, but nevertheless an inheritable interest. McNAUGHT, S. (at p. 631), says: " The mother, Ellen Tiffany, who was named as the beneficiary, survived the insured and died prior to receiving the 240 installments payable. If the deceased as the insured under the certificate had survived his mother, the beneficiary, he clearly would have been the sole beneficiary until another beneficiary was named. At the time of his death, it must, therefore, necessarily follow that the insured had an interest or estate in the proceeds of the insurance. It was contingent upon his mother dying before she received all of the installments, but such contingency did not prevent it from being an interest, or an interest inheritable by his next of kin, in the absence of testamentary disposition. As a part of the insured's estate, however, it was subject to his testamentary disposition. It was a right and a property interest which he owned and he was entitled to dispose of it as a part of his estate." In *Matter of Henry* (153 Misc. 208) MOREHOUSE, JR., S. (at p. 211), says: " From its inception, testator's contract of insurance vested him with certain property rights: *First*, the absolute right to have installment payments made to such beneficiary as he then named; and *second*, a contingent right of payment of the present value of unpaid installments after the death of a beneficiary. The situation is not altered by the fact that the manner of payment, the amount payable or the recipients might be altered or changed by Congress, even after the death of the testator. The contingent right existed at the date of his death, and for what it might be worth at that date was a part of his estate which passed under his will." In *Matter of Israelite* (155 Misc. 259) the language of the soldier's will was such as to clearly distinguish it from the will in the case at bar. The clause in that will under which the insurance fund was held to pass was as follows: " *Second.* I give and bequeath to my beloved mother, * * * all moneys that will be paid on any other insurance policies in force at the said time of my death." HENDERSON, S. (at p. 261), said: " I hold that the testator's war risk insurance certificate is an insurance policy within the intended use of that term by the testator and that the money paid thereon to the executor was specifically bequeathed to the testator's mother and is now payable to her estate." The decision in that case is hardly applicable here. In *Matter of Smith* (141 Misc. 651)

the soldier gave and bequeathed to his wife after the payment of his debts and funeral expenses, " All of my real and personal estate of every name and nature forever." He named his wife executrix. His wife was the beneficiary designated in his war risk insurance certificate. I held in that case that in no event could the war risk certificate fund be paid to the soldier's wife because she was also the beneficiary named in the certificate and her death was a condition precedent to the existence of the fund; that it was manifestly impossible for the fund which could not come into being until the beneficiary's death to pass under the soldier's will to that beneficiary; that there could be no presumption that the testator intended to do that which could not in any event be done; and that it was rather to be presumed that he had no intention of trying to do the impossible and that he, therefore, did not intend the bequest to the beneficiary to include the fund which could be brought into being only by the beneficiary's death. It is also true in the case at bar that under the statute as it was at the time of the execution of testator's will, and at the time of his death, no part of the soldier's war risk insurance could pass to his (the soldier's) estate if any person within the restricted class survived the soldier. The father, this testator, was within the restricted class and, therefore, his death was a condition precedent to the " reserve value, if any, of the insurance at the time of his death " becoming a part of the soldier's estate and thus passing to his father, this testator.

The decedent, Charles Baker, having died intestate as to this fund, it passes under the statute one-third to the Mantha Baker estate and two-thirds to the Albert R. Baker estate. It follows that Ross E. Baker, the personal representative of the Albert R. Baker estate, representing the larger interest, is entitled to the appointment as administrator *c. t. a., d. b. n.* of the Charles Baker estate and administrator *d. b. n.* of the Clifford E. Baker estate.

I hold as above stated.

Submit decree accordingly.